and Kuznetsov v. West Penn, Albania. And I don't know how we want to work rebuttal. Have you requested rebuttal? Yes, Your Honor. If I may have five minutes for rebuttal. Do you want it at the total end of the other? Yes. And I would, Your Honor, I was going to ask, are you intending to structure or would you like me to do rebuttal to each? It's up to you. Okay. Let me say five minutes for rebuttal. Five minutes for the end for both. That's fine. May it please the Court, Nelson Thomas on behalf of the appellant's plaintiffs in these actions. Let me just start with, why don't you seek interlocutory appeal here? Your Honor, we wanted to get the case moving more, as rapidly as possible. And the concern was that the people's claims were dismissed. I was going to say that didn't work, but go ahead. The people's claims were dismissed and we would have to then go about filing hundreds or thousands of other cases while we were waiting for a ruling on the interlocutory appeal. And it didn't strike us that that was the most efficient approach, to have cases being actively litigated, thousands of cases litigated in the Western District of Pennsylvania, to go through the process of seeking an interlocutory appeal, but instead to advance it so that we could get this issue resolved once and for all. But it seems like the way you're going now is, you know, you've got somebody bringing up a procedural roadblock and you could have avoided it had you gone the interlocutory appeal route. It's sort of six of one, half dozen of the other in terms of time, but there you know you're golden in terms of having the Court consider it on the merits. Here you've got a question as to whether you can get to the merits. We're comfortable that the law is in our favor, that you can get to the merits on this. If the answer is there is no jurisdiction, then we will, you know, have to go back and redo it. But our conclusion is that we were, this is exactly the procedure that is allowed both under Supreme Court precedent and under Third Circuit precedent, just because there were two viable options choosing. I struggle to find that precedent. Yeah. Well, I think that in terms of the precedent, I think if you look at Garrity, Roper, both of those cases, those are Supreme Court cases, both of those allowed for appeal once there was an adjudication on the... Garrity was a mootness situation. The fellow was released from prison. That's true. He didn't voluntarily dismiss his claims with prejudice. Yes, but this court has said in Huartez that you are permitted to, and most courts of appeal allow you to, dismiss with prejudice in order to do the appeal. It is, after all, a final order and brings up the collateral orders prior to that. But there were, this is sort of a step beyond Garrity and Roper. And there's a Ninth Circuit case called Smith v. T. Mogul. I don't know if you're, are you familiar with it? Yeah, I've seen that case. And then there's a Eleventh Circuit case called Cameron-Grant. And if you have a cite for that, if not, I can give it to you. But those deal with motions for conditional certifications of FLSA claims. And basically, if you have A, B, C, D, and you lose on the merits of A, B, and C, and you just have D remaining, you say, look, okay, it's not that big a deal. Let's just agree to have it dismissed with prejudice. That way we can appeal A, B, and C. Here, it's like you're trying to appeal D. And once you've given it up, how can you resuscitate it? Well, I don't, I think, I don't think that we are, I think under Garrity, we have a substantive interest. The named plaintiffs have a substantive interest. How so? Because they're entitled under the FLSA to bring representative actions. Well, if you look at the Smith case and, again, the Cameron-Grant case, they draw a distinction between the FLSA and class actions under Rule 23 because FLSA are opt-in and class actions are not. That's true, but that is not a distinction this Court has drawn in this Seismic v. Genesis case where, in that case, the facts are even more favorable for there being, that the case should have been mooted out because there was no conditional certification motion and there were no other opt-ins. Well, but that was an involuntary, that was like Garrity and Grover, an involuntary situation. Here, we have a, with prejudice, dismissal. Voluntarily. Voluntarily. Under what theory do you contend that you have the personal state necessary on appeal? I think there are... Under what case law? I think there, let me draw two, there are two terms that were thrown out there and I think it's important to distinguish between them. There's the voluntariness issue and there's the with prejudice issue. The with prejudice issue, I don't think, is a problem. Of course, appeals are always done with prejudice. I think it's a voluntary, you know, the claims are gone with prejudice. They've been adjudicated. So I think the question is, by doing this in a voluntary way, do you somehow waive your right to adjudicate or to appeal claims that were in the case? Well, what happens to their, I mean, their claims are gone. Whose claims? The four named plaintiffs. I believe... In Camisi. At least in Camisi they're gone, right? In Camisi, I'm sorry. In Camisi. Well, a couple of responses to that. First of all, we still have a state court cause of action pending. So they can get recovery, it may be different, but they can get recovery in the state court. But in this case. In this case. In this case. They're gone as much as they were gone if summary judgment had been granted against her. Or if... Yeah, but you have the right to appeal the summary judgment ruling. When you voluntarily dismiss with prejudice, the case goes back. Those four plaintiffs no longer have FLSA claims. The four named plaintiffs. I think under... Let me go back to Garrity and Roper. In those cases, the plaintiffs no longer had claims either. But class action... Again, I agree with this case's class action. Rule 23 is a different animal from FLSA. And we have 23F, where interlocutory appeals are granted. We have no companion permission to appeal in FLSA, which is another distinction. That is. And I think that's all the more reason that this is the appropriate mechanism to do it. And let me take a step back to... And inject the practical into this for a second. Cooper's Library... This is not practical right off the bat. But Cooper's Library is founded on the proposition that we're not going to allow interlocutory appeals of class certification decisions because there's a chance for them to be remedied later. Right? You're going to get a chance to do this. Let's take a step back and ask what is going to happen here if you don't allow jurisdiction in these cases. Yeah, I was going to ask that. What's going to happen is Karen... Let's take Karen Kamisi's case. Karen Kamisi, the certification denied. The 3,000 plaintiffs are off on their own now. Statute of Limitations is running on them. But she proceeds. She proceeds. Well, first she has to proceed. And at the same time, those 3,000 people have to file their lawsuits. Right? Because if they don't file their lawsuits, the Statute of Limitations is running on them. Isn't there some tolling? No, there is no tolling. That's the problem. Unlike Crown Court Conceal under Rule 23, there's no tolling here. So the problem is we would have to then go file 3,000 individual lawsuits and hope that Karen Kamisi's individual case is resolved. And mind you, as you said, there is no interlocutory appeal procedure. So we have to hope that Karen Kamisi's case is resolved first or soon. But however long it takes, merits, discovery, trial, whatever. We have to wait for that process to go forward. You could have sought interlocutory appeal. You could have sought interlocutory appeal, filed your 3,000 cases. Correct. If you win, then you're back into a collective action. And if you lose, well, that's what you have to do. Correct. We're not under Rule 23 yet, that's what I'm saying, Your Honor. But is that a better outcome? Is that the better outcome, that we file 3,000 cases and those are litigated while we're seeking interlocutory appeal? And it's very possible this court might say, we're not prepared to take it at this juncture. So we go through Karen Kamisi's individual case for her several thousand dollars worth of damages, wait till we receive a judgment on that. If the judgment is favorable to us, that raises issues about how we would appeal that, right? How do you appeal a favorable judgment on class search? If it's unfavorable to us, we then appeal that and then we get to where we are. But at the same time, all these other cases are going on. So I don't, I think, if anything, the difference between DFLSA and Rule 23, counsels in favor of, because there's no tolling and because you've got to file the cases, counsels in favor of jurisdiction in taking the flexible approach in Garrity and Roper and not saying you've got to go litigate this case and litigate the 3,000 others. And mind you, in the meantime, what happens if some of those other cases advance further along than Karen Kamisi's? Well, let's say they get a judgment. They can't appeal it, right, because they're not in the same case, so they're just sort of sitting out there. Then, let's say we get three, we win three cases, they win one, two are dismissed, substantial limitations found. What happens to those cases floating out there while Karen Kamisi's is still progressing through the system? Let me ask you a question, and this is a softball, but one way to distinguish the two cases that Judge Amber referred to, in those cases, they thought it fatal that there was an opt-in procedure and there were not opt-ins. Here, you have opt-ins. How many opt-ins do you have? Approximately, I get the number, approximately 3,000. 4,700 out of 3,200 or so, and then the other one you have, because Netsop, you have, what, 800 and some? How long has the case been pending? Three years, about. I mean, and I just, I think that this, we're all better off answering this question. It will create a, it reminds me a little bit of Dicencio, which sounded nice at the time. It sounded fine, oh, well, we'll put them in separate proceedings, but it sure made a mess of things. And my concern here is, if you say the only way that you can appeal an FLSA decertification decision is to go file 4,000 cases, pay the filing fee in all of them, commence litigation in all of them, have that litigation going on, and hope that you can get to the Court of Appeals in time, either interlocutory or by getting a judgment on the merits, and get up there, and I don't even know if the rationale that I'm, that has been suggested here, what happens if Karen Camisi wins? Let's say she does. I think what you have, in terms of what you're attempting to do, going back to the example of you have four claims, and you dismiss D, it's final, it's over. And if you dismiss with prejudice your claim here, which in effect is D, the blink response of the judges on the 9th Circuit, the 11th Circuit, and also there's some dicta on the 5th Circuit, is once it's final, that's it. And you're asking us to do a limiting principle on finality, and in effect asking us here, in particular, to say, let's create a circuit split between the 9th and 11th Circuit, and so it'll automatically get, probably go up to the Supreme Court. And then the other problem is the consequences of what you're suggesting. If we go your way, aren't named plaintiffs in effect going to be sacrificed in future cases? Well, two good questions, if I can answer them separately. I believe that the Supreme Court has been pretty clear on this, and other courts, the second included, have said that you can appeal the decision, that the dismissal with prejudice gets you to where you need to go. And let me say this, it is final. It's final in this sense, we're not sitting here, if you rule that class certification was appropriately denied here, the case is over. Over. Done. It's final. This isn't a case where Karen Kamisi's claims are currently percolating down there. What I typically think of non-final interlocutory orders is we're coming up while that case is bubbling. So those 3,000 cases won't be filed? Well, those 3,000 cases will be. The only way to stop that is to say you can have, that this is a final decision. But if we agree that the trial court properly denied condition of, denied certification of the collective action, are you going to file 3,000 actions? Well, yes, Your Honor. I doubt that all 3,000 will be filed, but that will happen. Or, is a better result that people say to themselves, I lost several thousand dollars, but I will tell you, I am not going to sit for a deposition and attend a federal court trial and pay a filing fee for $3,000. I think that means, I don't know which outcome is worse. Is it possible to consider either small or subclasses? It is very possible to consider smaller or subclasses here, and the court did not look at that. I don't think you necessarily need to, but that was not done. And my concern is, going back, this is final. It is over. We are giving it up. And the case is, this is final in the sense that once this is done, it's gone. So that's what gives you the finality. We're not sitting here saying we're bringing this up. And that's what Roper and Garrity both say is, you have a substantive claim, but you also have a right to pursue something collectively under a federal statute. And since you have that right, if you lose that, that is also a claim that you can bring up, A, B, C, and D. The right to bring up the substantive, the right to proceed collectively is something that you can bring up. You know, the briefing in this case didn't reference the actual relevant line of cases. And we're just finding them ourselves. But it seems, you know, the representative capacity that was found, especially in Garrity, to exist. You know, some of the cases have said that FLSA, that's not the same thing. Do we need, would you want further briefing? I mean, I was surprised there weren't 28J letters or something alerting to the line of cases that, you know, our law clerks, and I think you all can do the same research, we found probably 10 or 12 cases, two of them specifically under the FLSA exactly on point, just totally different from the way the case was briefed. Your Honor, I know my time is up, but I would, yes, if we could do additional briefing on that issue and pick up on this. I understand some of the Court's concerns, and I would like to address those. We did not get to the merits, but let's spend an additional four minutes addressing the merits, assuming we were to find jurisdiction. Would you like me to address merits now? Yes, let's do that now. And, Your Honor, can we submit some additional briefing on the issue of the jurisdiction? Yeah, I think that's what we would request, yeah. And I'll give you the details at the end. Okay. All right, in terms of the merits of this case, the focus of this litigation is on the defendant's corporate policy here. Both the policies are almost identical in both cases. It is not a challenge to individual or departmental policies. That is not what we're challenging here. But there are so many supervisors, so many different definitions of employees. How can there be a company-wide, quote-unquote, policy? A couple of things, Your Honor. First of all, if supervisors, the number of supervisors, was determinative of whether there could be FLSA class actions, that was the standard, if that's the standard, then we should just simply say there can be no FLSA class actions except on a supervisor-by-supervisor basis. That's not the rule. The rule is, in Zavala, you look at the policy that is being challenged and you ask, under that policy, who is affected by it? And the policy that we're challenging here, which implied invariably in every department, under every supervisor, and in both cases, the defendants say the policy was the same in all departments. All departments was the same. It was, we're not going to pay you even when we know you're working unless you also tell us in some format. That policy applied everywhere. Supervisors were not told, go out there and put down people's time that you know were working or you should have known was working. What is so wrong with saying to an employee, look, if you work during your lunch break and therefore we should not deduct the half hour, just tell us or tell your supervisor. What's wrong with that? There's nothing wrong with that if that's not the be-all and end-all policy. If your answer is the employer can't just simply say, well, I know you're working but unless you put it down, I'm only going to pay you if you put it down. For instance, the Supreme Court has said in Tony versus Tony and Susan Alamo Foundation, an employee can't volunteer their time. An employee cannot come in and say, I like you. I like this company. I'm going to volunteer. If an employee cannot elect to not report it even when they know it's working and want to, they certainly can't do it here or through inadvertence or otherwise not put it down and there's two reasons for it. The first one is the FLSA is designed to protect all employees. Lazy employees, employees who forget to put their time down as well as smart employees. More importantly, the FLSA is designed to spread work, to force work among more people so that we increase employment among more people. If people were allowed to not report their time and they wouldn't get paid for it, well, you wouldn't be spreading work which is the main purpose of the statute and you wouldn't be protecting employees. The burden is on the employer to put down what they reasonably know they should do. This isn't an onerous burden. This is not an onerous burden. In fact, here in this city, we'll just even look here, University of Pennsylvania was faced with a similar lawsuit started implementing reasonable measures to ensure that employees reported their time. Mercy did the same thing. In other cities, Harvard has done the same thing faced with similar lawsuits. This isn't something that is that hard to do. I was going to say, what is going to be the nature of the proceedings in the court? It sounds like you've proven the policy, that there is a policy. So, isn't it going to be all individualized? Well, Your Honor, first, we've proven the policy. I agree with you. The policy is there and it's conceded. They still contest that they still think it's legal. They stand four square with their policy. They say it's great. They say it's awesome. It's totally legal. Judge Ambrose said, what's so wrong with this? Your Honor, if I may finish. They say it's fine. They say there's something wrong with it. That's what the trial would be about. Is there something wrong with that? As in Reich, in the 11th Circuit, almost a very similar policy there. Employers said you can't work over 40 hours a week. If the lawfulness of the policy is at issue, an individual plaintiff can bring that issue before the court and have a determination on that. It's not like you're going to have 4,000 depositions that are going to impact the whole class. It seems to me it's a fairly discreet legal issue. Not a lot of facts involved. Your Honor, I agree. I think it would be a relatively straightforward issue. In fact, in Reich, it was determined on summary judgment whether the policy was legal or not. I'm not sure that you need a trial. Let's decide that once. Let's not have 4,000 lawsuits each time going up, well, is this policy legal this time? Is this policy legal this time? That's the whole purpose of a class action is to say is this policy legal? Can you shift the burden to the employee to get paid for the time? They think it's great. We don't. All right. We'll hear from you on rebuttal. Thank you. Mr. Myers? Good morning, Your Honor. I want to jump back to the appealability issue in a second, but let me just say this on the issue of the policy. Our policy is written policy. It's in our brief. It is that employees who work at all through a meal break are to report that and they will be paid. The efforts are in there about all of the things we do to make sure employees and to facilitate their reporting of their working during a meal break and paying them. Judge in the court below Judge Bassoon found specifically that our policy was not illegal. We're not here to decide that. Well, this is what the argument is. Let's decide the lawfulness of the policy. There are 15 cases cited in Judge Bassoon's opinion that have similarly held that this policy is not unlawful. The Sixth Circus just a few months ago in the White against Baptist case which we cited held that this policy is not unlawful. There's no issue here. I don't think we're going to say we won't certify because we think there really is a non-issue at the end of the day. I'm not sure. I agree, Your Honor. My point is it's not a question is the policy illegal? The question is in individual situations was the policy actually applied as written? That's what each of these plaintiffs are raising in their claims and their merits. Chief Justice Berger made the critical distinction between the line of cases Roper, Garrity, Simsek and the present case and he made it in the Roper opinion where he said addressing this issue of whether the right to appeal the denial of class certification was moot, Chief Justice Berger said this, the factual context in which this question arises is important. At no time did the named plaintiffs accept the tender in settlement of the case. Instead judgment was entered in their favor by the court without their consent and the case was dismissed over their continued objections. The Chief Justice then went on to say why this was an important factor. It was a critical factor to the decision. He said because only a party agreed by a judgment or order may exercise the statutory right to appeal therefrom. Now Simsek, the Supreme Court's granted cert, has it not? Yes, Your Honor. And that you're arguing by analogy in support but it would seem that the Ninth Circuit and the Eleventh Circuit cases that we previously cited, Smith and Cameron Grant, probably would be a more direct help, would they not? Well, the issue in here unlike the issue in Simsek is over whether there's a final order. And I think our focus in our briefing was on what this court held in Sullivan and that is if you procure the dismissal of the case in the court below, you cannot appeal a class certification decision. Because that circumvents the rule that those decisions are not appealable independently. And I mean frankly, Your Honor, to me the Sullivan case is on point. What the plaintiffs did here was procure the dismissals of their case so they could appeal the class certification issue. They were somewhat playing fast and loose with the court by refusing to totally above board. We are going to ask this court to dismiss with prejudice so that we can take, so we have a final order to take an appeal. And everybody knew what was going on. And Your Honor, if you look in the supplemental record there are two things that I want to respond to that Mr. Nelson said. He referred to there not being a tolling agreement. I filed a supplemental record. We agreed, and it shows, I agreed to toll all of these collective plaintiffs so that they could exhaust this appeal. But I also said in the same email that we would not stipulate to the dismissal of the claims because we did not want it to appear as though we were agreeing that this was an appealable order. We were very up front with that. We did not think it was an appealable order before the dismissal was even before they even elected to do that. They certainly had every right to go to the district court and ask to have this certified. But they didn't do that. They elected to take this process, which we feel deprives the public court of jurisdiction. I also would like to go back to the 11th Circuit has two decisions that, where they have held that if you dismiss your case to try to appeal an interlocutory order, the public court does not have jurisdiction. There's no case or controversy because the final order, that is the dismissal, has to be an order as to which there are adverse positions. Are those cases in your brief? Yes, Your Honor. You didn't say the Cameron Grant case? No, Your Honor. We did not. Frankly, the line of cases, Roper and Garrity, I felt that because they did not deal with the final order issue, they didn't come up on my radar until the court sent the letter. I apologize for that, but I can see very much why they would. We have two issues here. The one is the final order, but the other is the stake on appeal of the appellants once they have voluntarily dismissed with prejudice. We weren't arguing mootness, that that issue was moot. We're saying that there's no appealable order. It's really standing in the sense that maybe mootness is the same thing, but what interest do they have in the action and the case at all once they have dismissed their claims with prejudice? Yes, Your Honor. I'd be happy to talk more about this. What's the consequence of allowing a party to dismiss with prejudice their claims in order to bring forward an otherwise interlocutory order? How would we say, in collective actions you can do that, but in individual actions you can't? Your Honor, I don't know by what principle would you limit that? If I don't like a discovery order, I could dismiss my claims and then claim I can take an appeal. If I don't like any order that I don't like, I think one of the briefs that was filed here, not ours, used the word if you say that you can create a right to appeal an interlocutory order by simply dismissing your claims and then taking the appeal, then Katie bar the door. There is no limiting principle to that process. On the merits of the appeal, this Court's decision in Zavala against Walmart stores established three points that are important here. The first is that it's the plaintiff's burden to prove by preponderance  group of plaintiffs are similarly situated. Second, that the district court's finding that the plaintiffs are not, in this case, similarly situated, must be upheld unless it's clearly erroneous. And third, and this is critical here, the Court held if liability and damages must be individually proven, it does not matter that there may be certain common links among the proposed members. The case cannot be certified. By their very nature, meal break claims, such as the prior individual proof, there are five things that have to be proved for any one plaintiff to establish a violation of the FLSA for missed meal breaks. First, that the individual worked during a meal break. The proof, if Karen Camisi proved that she missed five meal breaks because of patient emergencies, what does that tell the jury about what some assistant cook did, whether he missed any meal breaks, because of other reasons. You can't prove that you missed a meal break collectively. Each plaintiff must come in and testify as to their experience in that regard. Secondly, that the individual supervisor had reason to know, suffered or permitted the employee to work during the meal break. How does the fact that Karen Camisi's supervisor was aware that she had worked during a meal break and wasn't paid, what does that tell you about any other plaintiff's claim? Each plaintiff would have to establish why its supervisor, that person's supervisor, had reason to know. The third thing that has to be proven is whether or not they were paid. The record shows that millions of meal breaks were paid just in the last four years. So obviously, many people work through meal breaks and get paid for it. So the fact that Ms. Camisi may not have been paid for a particular meal break doesn't tell the court or the jury anything about the experiences of the rest of the 3,000 class members. They have to also prove, in order to show a violation of the FLSA, that this incremental, that that half an hour would have put them over 40 hours or would have resulted in overtime. The record shows that most of these employees for most of the weeks worked fewer than 38 hours, meaning there is no FLSA violation. Each plaintiff would have to establish that that person would have gone over 40 hours if they had been paid for that half an hour meal break. But if this were a class, I mean, we're always going to have look at the asbestos situation where everybody has to file certain things, certain records. I mean, these things could have been proven in submissions, in individual submissions, in connection with the case, could they not? They would have to be proven. Every single element of the case has to be proved by each particular plaintiff. And we haven't even gotten to the defenses yet, Your Honor. I'm just talking about the elements of a claim. That simply can't be done collectively. We have a right to cross-examine these people that say, yeah, my supervisor winked at me and said, good for you when I was working during a meal break. We have a right to challenge that testimony in each individual case. Every single court to have confronted this with rare exceptions, and Judge Bassoon cited them, has held that meal break cases are not suitable for collective treatment for the reasons I've just gone through and the many, many reasons we had in our brief. Thank you, Your Honor. Thank you very much. Mr. Cronin. May it please the Court, David Freiman for the West Penn Allegheny Entities. Your Honors, Mr. Myers highlighted what I think is the critical line from the Roper decision, which is that the factual context is important here. There's no dispute here that neither the defendants, through offers of judgment or tenders of settlement, the court, through a summary judgment, or a dismissal, or any circumstances such as somebody being released from prison, conspired to prevent these plaintiffs from moving for certification, from fully litigating certification, or from prosecuting their claims. What was cited by Mr. Myers talks about the involuntary nature of what happened to the plaintiffs there. Here, it's voluntary. Why does it make a difference? As long as the dismissal was with prejudice, you have an appeal. Well, the dismissal would... And then, there will be an issue if something was dismissed with prejudice as to whether they have a stake, but the dismissal with prejudice means final, doesn't it? It means final, but they're not trying to appeal that order. They're trying to appeal a collateral order that they didn't seek interlocutory review upon. In the Roper case, they attempted to do that. They objected to the tenders offers of settlement. They did everything in their control to prevent this from happening to them, and now found themselves where they were out of court, but they still had this personal stake. At the time of this voluntary dismissal, these plaintiffs had more than the personal stake and certification. They had their claims, and they went and, to quote, at least in my family, no less of an authority, this is a bed solely of their making here. And to Judge Ambrose's point, all the line of cases that the plaintiffs cite, when they talk about forever abandoning their claims, they literally mean forever abandoning their claims. When Mr. Thomas says that, oh, you know, we don't get certification, we're done, but if you do get certification, we're not done. In those cases that they cite, that D claim, they're saying, that's never coming back. We're forever abandoning that. And here they're trying to say, we're forever abandoning things, but we're not at forever abandoning things. We want to now go seek through a direct review what we couldn't get. Yet, they didn't even seek the opportunity under the existing rules, under 1292 B. And what I hear Mr. Thomas saying with respect to let's look at this practically and look where we find ourselves and why we didn't want to file these 3,000 cases or seek an invocatory, it's nothing more than an attempt to make a different rule and to rewrite the rules because they don't... And the rule says that it's not appealable and they say, well, we'll make it appealable by and I say under the existing rules and the case law that they've abandoned that claim, they dismissed it with prejudice, so how can they appeal that order? You say the order appealed from has to have been adverse and I assume Sullivan is your main case? Yes. If we get beyond that to the issue of, okay, it was final, it was with prejudice, then where are we? If we say it was final. If we say that, if you say that's final, I think I have a tougher argument to make there. Well, what stake in the outcome do the named plaintiffs have, the appellants? The appellants, I'd say they've abandoned. We might have a final order, but where's the stake in the outcome of the controversy? That's right and unlike in Garrity, you had plaintiffs who hadn't yet been, or putative class members who hadn't yet been released from prison who sought to intervene. Here you haven't had any attempt by any opt-in who was dismissed attempting to file their own case, attempting to intervene in this matter, saying I have a stake in this matter. Moving on to the merits. With respect to this policy, it's interesting. Initially, the plaintiffs On the merits, what elements do you think the plaintiffs have to show in order to prevail? I think they have to show in each case that they were denied a meal break, that there was constructive, actual or constructive knowledge, and that they weren't paid for it, and that in that particular week they worked more than 40 hours. Now, with respect to this policy and this constructive knowledge argument, at best that's up at 40,000 feet, that we have a system here that has the potential that it's not capturing all the time, but in order to figure out in any plaintiff's case whether in fact that happened, you need to look at what actually happened on the ground. To quote the old broadcasters, we need to go to the videotape. We need to see what actually happened. I think it's incredibly telling that plaintiffs did not cite a single line of deposition testimony. Did not talk at all about what their clients actually said about their experience. Let's go granular here and talk about some of these plaintiffs. Pippa Bowie was a transport associate. The testimony with respect to that department is that the assignments were done by computer and their lunch breaks were scheduled and when that particular plaintiff, Ms. Bowie, would go on a lunch break she was removed from the computer assignment screen so that it wasn't possible for her to get an assignment during those 30 minutes. Now, is that experience, is that representative of what happens in some nursing unit at a different hospital? You know, you had plaintiffs, another guy, John Kavis. He didn't like taking lunch. He didn't like eating his meal. He preferred to take a half hour at the end of the day. He was not required to shower, but he liked to go and shower and change his clothes and have his break that way. The supervisor had the discretion to bless that. In fact, that was what happened. He said, now I only get 20 minutes instead of 30. At some point there's a balance. The FSLA provides for collective actions. Not everybody's the same. There are differences. When do you say that the differences are so individualized that we're not going to have class certification versus when you say, okay, we'll muddle through. There are certain types of FLSA claims that are absolutely tailored to the collective mechanism. For example, misclassification cases where you're saying these individuals were improperly classified as exempt. They're all in the same job. This is what these people are doing, and it's a question of whether they satisfy the exemption. Or, for example, the Andrejko case, another case decided by Judge Ambrose which she distinguished where there was a policy that we are not going to pay any of these people in this same job for this walking time. We're only going to pay them for X amount for this shift. There were no individualized differences. Yet in these meal break cases, district court after district court, when confronted with the prospect of having to try these cases said, how can we do this? Because each person's experience, particularly when you have the implementation and discretion at the department level, whether we're going to schedule them, not schedule them. Some people, we have these login and logout sheets. Even the constructive knowledge theory, when we have individual plaintiffs conceding that yes, on occasions I would fill out that form and yes, I did get paid. Then the constructive knowledge issue, I think it's reasonable for the defendants to argue well, if that supervisor knew that on all these occasions the individual had no problem filling out the form and getting paid for it, why would I have reason to think that if there was another occasion where they worked through and they didn't submit the form that I would think that happened. If we deny collective actions or district courts do and then we affirm that we get to the merits, doesn't that encourage hospitals to have decentralized timekeeping systems that is a different system for each hospital? In order to defeat FSLA claims? I don't think the records in these cases suggest that in any respect hospitals or health systems are trying to do anything but to accurately record time and that putting the so-called burden on the employee to report their time has been blessed from time immemorial and that each employer, each department it's not a one size fits all in terms of how you most effectively accurately record time work. Thank you. Thank you very much. Mr. Thomas, I have a question. Your colleagues rely heavily on Sullivan and Sullivan says the end of the opinion having made no attempt to secure a 1292B certification, appellants argue instead they're seeking review of the class determination. Since appellants do not contend that the order of dismissal was in error, however the only issue that appellants would have us decide is the correctness of the refusal of class certification by the district judge. We view appellant's strategy as an attempt to avoid this court's firm position against interlocutory appeals of class certification determinations. Why is that not control here as to whether since you cannot object to the dismissal and clearly do not because it's voluntary how are we would we be permitted and how can you have review of the adverse class certification? Because the Trevino case that came out from the Third Circuit after Sullivan which says when a plaintiff has had all but one of her claims dismissed and is willing to abandon the remaining claim a stipulation agreeing to the dismissal of the remaining claim promotes judicial economy by eliminating unnecessary proceedings at a trial level without posing any danger of piecemeal litigation. Yeah, but there were three claims there that were capable of review. And I believe under Garrity and we will brief this, but I believe under Garrity and Roper we have a claim, I will use that phrase loosely, but we have an interest, a judiciable interest in litigating the case collectively. Well, that's the second issue. That's not the finality issue. The finality issue is what your colleagues are really pressing. We in arguing before, when you were arguing before, were pressing the second issue of okay, you get over finality, you're here you have one foot in the door but will we let you actually come in? In terms of that I think the distinction is exactly what your in that case they showed up and said hey, we're not going to do trial, we're just we're not going to do anything more in this case, we're done. And then later, oh by the way well now we're going to appeal it. That's entirely different and I totally understand the reasoning in that type case. So you kind of load the word strategy. Well, yes, we all engage in strategy I guess, but you know, but not to show up and not go forward at a trial is entirely different than saying we want to do this for appeal. It is certainly a final, I mean it is a final order. There's nothing more final than dismissal with prejudice. I mean it is final. But in Solomon it was arguably final too because they were out. I guess they were going to be able to come back again and yet we said look, you're not appealing that, you know, they could have appealed the failure to prosecute but they didn't. I guess the difference is I think if someone wholly abandons their claims and later decides they want to revive them by appealing them, that's a problem. I think it's entirely different when you say we're abandoning what remains of our case in order to get appellate review and we're willing to forego it for all time. I think that is a different situation much more appropriate for a final review. I would also say too the voluntariness, what I think this really comes down to is by doing this voluntarily are you waiving your claim? It's really a waiver argument at heart. Are you waiving it? Waiver is a voluntary relinquishment of a known right. Not showing up at trial and doing and refusing to show up at trial and do anything is a voluntary relinquishment of a known right. This is not a voluntary relinquishment of a known right. This is we have this right, we intend to exercise it. You lose me on the second part then. You say we have this right. What right do you have anymore? What right does she have anymore? She has a right under the FLSA to proceed in a representative capacity which was denied her. She has that right. She no longer has a claim. How can she have a... Garity and Roper, they didn't have claims anymore either. This is where the Smith case really comes into play because there was, yes we're going to give up our claim and have a judgment entered against us with prejudice but we reserve the argument that you're now in effect making to the court that we can still go ahead and have an appeal taken and somehow get to the merits and the court said no way. Can't do it. FLSA is different. I think that's something we need to have you address. I have three seconds left. May I have just a second on the class issues. I will address these issues obviously in the briefing that is coming. My concern with the defendant's argument on the class certification issue is this. That argument decertifies every FLSA case although they say it doesn't. In every case according to them, and they're not right on this either, according to them any time where you have to decide whether an individual worked a certain amount of time and how much they worked there can't be certification because you have to do that every time. Tell me an FLSA case where that isn't true. Tell me a case where you don't have to do that. The reason it is not an impediment though is that that is a damages issue. This court held in Selker Brothers, and we cited it, but in Selker Brothers this court held that you do not need to have everybody testify in order to establish FLSA damages. The plaintiff has an obligation to show it by just and reasonable inference, but it's done by representative testimony. That is inherently a class issue. Their argument even in a missed class case, they say, oh, missed class case is fine. Even there they argue, I have missed class cases, they argue about job duties. Everyone did their job differently, but beyond that their same argument applies. Oh, we'd have to prove how much time everybody worked. That's done through representative testimony. That is never an impediment. They can't really come up with anything else besides that. I would say that this case is much further along if we rule on the legalness of the policy. Isn't the problem with representative testimony have all these different job classifications, all these different people? How do you compare a cook to a nurse? Two solutions. One is it is representative testimony. If you need to do it by saying these job duties and these job duties, you can split it up that way. I will tell you there's not a lot of differences here. They did an incredible number of depositions of people in this case. Everybody, no matter what job or location, and they tried very hard to find people who wouldn't have claims, everybody testified that they worked a substantial amount of time without meal breaks. What's particularly galling about these cases is the defendants knew it. For magnet certification, they had to do NDNQI surveys. These surveys came back and said 80% of the respondents are working through their meal periods and not getting paid. They're canceling at the rate of 8%. If you're a hospital like University of Pennsylvania, which changed it, if you're a hospital and you see 80% of your people are working through their meal breaks and you're canceling at 8% of the time, that's a problem. If this case isn't certified, there will become a race to the bottom not a race to the top in terms of policies. Thank you, Mr. Jones. Thank you. The case is well argued. We'll take it under advisement. With respect to supplemental briefing, I think it would be as to the issue and we mentioned the two cases that we thought were on point. One, the 9th Circuit and one, the 11th Circuit. Smith, which is 570 F3rd 1119 and Cameron Grant which is 347 F3rd 1240 that really zero in on the FLSA aspect. I think that's the issue that we'd like addressed is once that claim one claim is gone, is there a personal state? Let's seek supplemental briefing from the appellant by the 25th of March limited to 10 pages and then 10 days later by the appellee which would be probably soon thereafter, right after Easter. April 3rd or 4th. And then 8 days for a reply. So the initial briefing would be 10 pages and the reply would be 6 pages. April 3rd is Wednesday, I think. Yeah, April 3rd would be fine and then 8 days after that, the 11th, the reply would be due. 10 pages, 6 pages.